In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00083-CR

                                                ______________________________

 

 

                                WILLIAM ALLEN COOPER,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CR01517

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            In the 50s,
before the advent of video cameras and cell phone videos, a popular song
advised us that standing on the corner and watching females pass by was
acceptable conduct and that “you can’t go to jail for what you’re thinking.”[1]
 Watching may still be acceptable
conduct, but recording that parade may violate the law in Texas today. 

            William
Allen Cooper was convicted by a jury of an offense entitled Improper Photography or Visual Recording.  The offense is a state jail felony, and on
two counts, he was sentenced to the maximum punishment:  two years in a state jail facility on each
prosecution and a $10,000.00 fine.  See Tex.
Penal Code Ann. § 21.15
(Vernon Supp. 2010).

I.          Issues on Appeal

 

            Cooper
raises several issues on appeal, including a Batson[2] claim, issues
about the unsupported assessment of costs against him, and issues concerning
the harm caused by improperly admitted evidence and an improper opening
statement by the prosecutor—that attempted to convince the jury to convict
based not on the evidence, but on evidence that it could not see until
punishment (when the rest of the story would be revealed).  We need not address those issues, as we
reverse both convictions based on insufficiency of the evidence. 

            As
applied to this prosecution, the statute criminalizes the act of photographing/recording
a visual image of another at a location not a bathroom or private dressing room
without that person’s consent, and with intent to arouse or gratify the sexual
desire of any person.[3]

II.        Facts 

 

            Cooper was
convicted for making video recordings (shot through a window) of females
walking down the sidewalk, or down the street, in front of either his home or
business.  The subjects were fully clad
and were not in a private area.  We have
duplicates made by the State of the only two tapes involved, containing several
hours of video, which the State edited into a short “best of” video for the
jury’s perusal.  All of these were
introduced into evidence and made available to the jury.  The videographer used the zoom function on
the camera at various times to obtain close-ups of specific parts of female
anatomy.  Those close-ups are what the
State relies upon to prove intent—the statute requires the video to have been
made with the intent to arouse or gratify the sexual desire of a person.  The State argues that this choice of subject
matter would allow a jury to find the requisite intent, and counsel does not
argue to the contrary. 

III.       Sufficiency of the Evidence 

 

            The critical
issue in this review is whether the evidence is sufficient to allow a rational
jury to decide that the State had proven, beyond a reasonable doubt, that
Cooper was the videographer.  In
evaluating Cooper’s legal sufficiency challenge, we apply the Jackson standard as explained in Brooks.

The relevant question is whether after viewing
the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. 

 

Jackson v. Virginia, 443 U.S. 307, 319
(1979).

 

            In the Brooks plurality opinion, the Texas
Court of Criminal Appeals found “no meaningful distinction between the Jackson v. Virginia legal-sufficiency
standard and the Clewis[4]
factual-sufficiency standard, and these two standards have become indistinguishable.”  Brooks
v. State, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6,
2010) (4-1-4 decision).  Further, a
proper application of the Jackson v.
Virginia legal sufficiency standard is as exacting a standard as any
factual sufficiency standard.  See id. at *11.  In a concurring opinion, Judge Cochran
pointed out that the United States Supreme Court has rejected a legal
sufficiency test that requires a finding that “no evidence” supports the
verdict because it affords inadequate protection against potential
misapplication of the “reasonable doubt” standard in criminal cases.  Id.
at *16 (Cochran, J., concurring).  Rather
than meeting a mere “no evidence” test, legal sufficiency is judged not by the
quantity of evidence, but by the quality of the evidence and the level of
certainty it engenders in the fact-finder’s mind.  Id.
at *17. 

            We thus
examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the
jury “to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).  If we determine that the evidence is legally
insufficient to sustain a conviction, the proper remedy is to reverse the case
and order acquittal.  See Tibbs v. Florida, 457 U.S. 31, 41–42
(1982); Taylor v. State, 626 S.W.2d
543, 545 (Tex. App.—Texarkana 1981, pet. ref’d).

            We
measure the evidence “by the elements of the offense as defined by the
hypothetically correct jury charge for the case.”[5]  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge “sets
out the law, is authorized by the indictment, does not unnecessarily increase
the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.”  Id. 


            A.        Evidence
of Cooper as the Recorder  

 

            Certain
matters are undisputed.  The videos were
taken from inside Cooper’s house and from inside his business (a detail
shop).  They were taken with a camera that
was found near his residence and that had previously been in his
residence.  The tapes themselves were
found inside his house.  The evidence
also shows that Cooper did not have sole access to either his home or
business.  Cooper had teenage children
who visited the house, Maria Gooden (Cooper’s ex-girlfriend) had an eighteen-year-old
son, and Cooper had employees at the business. 
There is no testimony from any source that any individual saw Cooper
using the video camera either while taking these videos, or at any other time.

            The State
relies on the location of the filming, the testimony of a police officer,
Brandon Harbison, and the testimony of Cooper’s ex-girlfriend as evidence that
Cooper filmed the video.  

            The police
officer testified the ex-girlfriend (Gooden) had told him that Cooper made the
videos because she had seen him on the recording.  The officer did not testify that Cooper made
the videos—only that he had been told by Gooden that Cooper had done so.  

Q.        Do
you know whether or not Mr. Cooper was the one videotaping these girls, the one
who was operating the camera?

 

A.        I
was told so by Maria Gooden.[6]


 

The language used by the officer
in his nonresponsive answer to the question does not provide direct testimony
that Cooper made the video.  It provides
evidence that the ex-girlfriend told him that Cooper made the video.  Even if a portion of this evidence was
admitted before the jury, since the officer was merely quoting Gooden, the
basis of the evidence must stand on the testimony of Gooden.  

            On redirect
examination, the officer testified that “he was in the video -- one of the
videos, and I don’t remember which tape it was on, for a very short time.” 

            Gooden
testified that after she found the camera in the house, she thought Cooper was
operating the camera, because she had seen images of Cooper on it when she
viewed the first tape.  Objections were
raised to her testimony, along with impassioned discussion before the judge
(and out of the hearing of the jury) by counsel, who stated that he had watched
the DVD copies of the tapes (which the State then reaffirmed were true and
accurate copies of all of the tapes) and had seen nothing with Cooper
appearing.  

            After the
discussion at the bench, the trial court ruled as follows:

 

THE COURT: 
Ladies and gentlemen, there was a question about a clip, and I have
sustained the objection.  The tape will
speak for itself.  And so you shall
disregard any reference to the tape.   

 

Accordingly, Gooden’s prior testimony about what she had seen
on the tape was removed from the jury’s consideration.

            Despite
this directive from the trial judge, the prosecutor attempted to obtain the
same testimony again:

Q.        At
one point I believe you testified you thought you saw him or you could identify
--

 

[Defense counsel]:  Judge, we’re going to -- we’ll re-urge our
motion -- objection.  I’m sorry.  I mean this -- I’m not sure this isn’t the same
question just rephrased. 

 

            .
. . .

 

THE COURT: 
Well, let’s get to playing the tapes so the tapes will speak for
themselves.  We don’t need the commentary
as to what they are or whatever. 

 

As a result of these proceedings, none of the testimony of
Gooden about what she observed on the video was placed before the jury during
that exchange.  The court quite
reasonably concluded that the jury could observe the videos and reach its own
conclusions without her extraneous explanation of what she believed she had
seen on one of them—at some undefined and unspecified point in the recording.

            Later,
however, the State attempted to circumvent the trial court’s ruling, and to
some degree succeeded.  

            The
prosecutor asked Gooden: 

 

Q.        Do
you know who was making these videotapes that you found?

 

A.        William
Cooper.

 

Q.        And
how do you know that?

 

A.        Because
there’s a clip in one of them that he’s wearing his shirt that I used to wash,
and I know his build and body and his favorite chair.  

 

Then,
on cross-examination, the following transpired:

 

Q.        Now, you say he’s in one of these
videos?

 

A.        Yes.

 

Q.        So
if he’s in one, who took that picture? 

 

A.        He
was holding the camera.  You could see
him holding the camera at this angle. 
Like that.

 

Q.        How
do you know that?

 

A.        You
can see it.  It’s a quick clip.  You can rewind it and watch it again.

 

IV.       Analysis of Sufficiency of the Evidence
that Cooper Recorded the Videos

 

            A.        The
Video Recordings 

 

            The Texas Court
of Criminal Appeals has very recently explained the test for legal sufficiency
of the evidence in Brooks.  The sole hypothetical provided by the Texas Court
of Criminal Appeals for our elucidation is one that shows the court intends for
review to be not just of the quantity (“no evidence standard”), but the quality
of the evidence presented.  That
hypothetical is easily applicable to the situation before this Court in this
case.

The store clerk at trial identifies A as the robber.  A properly authenticated surveillance
videotape of the event clearly shows that B committed the robbery.  But, the jury convicts A.  It was within the jury’s prerogative to
believe the convenience store clerk and disregard the video.  But, based on all the evidence, the jury’s finding of guilt is not a rational
finding.

 

Brooks, 2010 WL 3894613, at *11 (emphasis added).  Under a pure “no evidence” analysis, there is
obviously some evidence in the hypothetical to support conviction of robber A.[7]  The clerk testified A did it.  In Judge Cochran’s concurrence joined by
Judge Womack, it is explained that legally sufficient evidence is of such
sufficient strength, character, and credibility to engender certainty beyond a
reasonable doubt in the reasonable fact-finder’s mind—evidence lacking that
strength is legally insufficient.  Under
this analysis, the above example is legally insufficient.[8]


            Just as in
the example in Brooks, under a “no
evidence” or “quantity” analysis, there is some evidence to support
conviction.  Gooden testified that she
saw Cooper in the videotape.  Harbison
testified, albeit very briefly and in some conflict with his own prior testimony,
that he had seen Cooper in a very short clip in the videotape.  The State has not attempted to identify where
such evidence may be found on the videos. 

            This Court has the videos.  We have reviewed them carefully.  At various points, the inside of the
residence or business is visible and identifiable.  There is a little red chair as described by
Gooden—but unoccupied.  The video quality
is very poor—there are four thick lines of static running across the screen for
their entirety.  The focus of the camera
is on females walking up and down a public street.  The zoom feature is used regularly to focus
on particular portions of their anatomy. 

            What does
not appear in any of these videos is the critical fact.  There is no recording of any portion of the
videographer taking the pictures of the two complainants—or of any individual
taking any other videos of other females through the windows.  At no point does the body of the individual
taking the pictures become visible, in any part.  There is no picture of Cooper, or of any
shirt that could have been recognized by Gooden.  

            In summary,
there is no testimony that anyone saw Cooper filming the videos, but there is
testimony that they saw Cooper on the videotape.  After a painstaking review of all of the evidence,
including the videos themselves, it is clear that the video recordings do not
contain any pictures of Cooper—or anyone else—that could reveal who was
operating the camera when making the recordings that are the subject of this
prosecution.  It is, therefore, under the
explanations made in Brooks of
sufficiency review and the hypothetical provided, and applying the standard of Jackson as explained therein, not
rational for a jury to conclude that Cooper took the videos based upon the
testimony of Gooden and Harbison. 

            B.        Circumstantial Evidence 

 

            Is the remaining evidence sufficient
to allow a rational jury to determine beyond a reasonable doubt that Cooper was
the videographer?  Ownership of the
camera proves ownership.  Without more,
it cannot prove beyond a reasonable doubt that the camera was used at a
particular time by a particular person. 
There is no evidence that Cooper had sole possession of the location
from which the videos were made.  The
evidence shows to the contrary.  The
uncontroverted evidence shows that at least several other people had access to
both locations over an extended period of time. 


            The
question as properly sent to the jury in its charge, consonant with the
indictment, asked whether it found

from the evidence beyond a reasonable doubt that
on or about the 2nd day of October, 2008, in Red River County, Texas, the
defendant, WILLIAM ALLEN COOPER, did intentionally or knowingly commit the
offense of Improper Photography or Visual Recording, by then and there, with
intent to arouse or gratify the sexual desire of the defendant, record by
videotape a visual image of another, namely, [Jane Doe] at a location that was
not a bathroom or private dressing room, without the consent of the said [Jane
Doe], then you shall find the Defendant 
guilty of improper visual recording as charged in the indictment. 

 

            By analogy,
in many controlled substance cases, the issue is whether one, not in exclusive
possession of the drug, has sufficient contact (links) to it to be jointly in
possession.  If that were the only issue
here, we would find no difficulty in affirming a jury finding that Cooper had
possession of the camera—it was found in his house, the camera was his, etc.  But here, another step is required—there must
be evidence that Cooper recorded the images. 
Proving that he at one time had possession of the video camera does not
provide any evidence that he filmed the particular recordings involved.  Under the review of the evidence required by Brooks, even in the light most favorable
to the verdict, a rational jury could not conclude that this evidence is such
as to permit it to find beyond a reasonable doubt that Cooper recorded those
visual images.  

            We reverse
the conviction and render a judgment of acquittal.

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          October
20, 2010

Date Decided:             November
16, 2010

 

Publish 

 











[1]“Standing
on the Corner” from the show “The Most Happy Fella” (1956) (Frank Loesser) Recorded by The Four Lads, Dean Martin,
and The King Brothers.

 





[2]Batson v. Kentucky, 476 U.S. 79 (1986).






[3]Section
21.15.     Improper Photography or Visual
Recording

 

                (a)           In
this section, “promote” has the meaning assigned by Section 43.21.

 

                (b)           A
person commits an offense if the person:

 

                                (1)           photographs or by videotape or other
electronic means records, broadcasts, or transmits a visual image of another at
a location that is not a bathroom or private dressing room:

                                                (A)          without the other person’s consent;
and

                                                (B)          with intent to arouse or gratify the
sexual desire of any person;

                                (2)           photographs or by videotape or other
electronic means records, broadcasts, or transmits a visual image of another at
a location that is a bathroom or private dressing room:

                                                (A)          without the other person’s consent;
and

                                                (B)          with intent to:

                                                                (i)            invade the privacy of the other
person; or

                                                                (ii)           arouse or gratify the sexual desire
of any person; or

                                (3)           knowing the character and content of
the photograph, recording, broadcast, or transmission, promotes a photograph,
recording, broadcast, or transmission described by Subdivision (1) or (2).

 

                (c)           An
offense under this section is a state jail felony.

 

            (d)           If
conduct that constitutes an offense under this section also constitutes an
offense under any other law, the actor may be prosecuted under this section or
the other law.

 

            (e)           For
purposes of Subsection (b)(2), a sign or signs posted indicating that the person
is being photographed or that a visual image of the person is being recorded,
broadcast, or transmitted is not sufficient to establish the person’s consent
under that subdivision.

 





[4]Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996).





[5]Malik controls “even in the absence of
alleged jury charge error.”  Gollihar v. State, 46 S.W.3d 243, 255
(Tex. Crim. App. 2001).





[6]Counsel
objected to the evidence as hearsay.  His
objection was sustained, but the court declined to instruct the jury to
disregard the evidence.  





[7]As
mentioned earlier, Judge Cochran, in a concurring opinion, explained that the
United States Supreme Court had rejected a legal sufficiency test that requires
a finding that “no evidence” supports the verdict.  Brooks,
2010 WL 3894613, at *16 (Cochran, J., concurring).

 





[8]Further
supporting this reasoning is the source of the hypothetical:  a dissent in Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000) (which two
members of this plurality had joined).  In that opinion, Presiding Judge McCormick
explained, 

 

A properly applied Jackson v.
Virginia standard, therefore, is much more exacting than Clewis
claims.  Jackson v. Virginia
requires the reviewing court to consider all the evidence in the “light
most favorable to the verdict,” and then it requires the reviewing court to
decide whether the jury’s finding of guilt is “rational.”  A properly applied Jackson v. Virginia
standard is essentially as exacting a standard as a “factual sufficiency”
standard which means that when the evidence meets the Jackson v. Virginia
standard, it can never be “factually insufficient” and when the evidence is “factually
insufficient,” it will always be insufficient under the Jackson v. Virginia
standard.

 

Johnson v. State,
23 S.W.3d 1, 15–16 (Tex. Crim. App. 2000).